# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **CIVIL ACTION** |
| **WORLDWIDE COMMODITY CORPORATION,** a Florida corporation, **SOUTH COAST COMMODITIES, INC.,** a Florida corporation, **STEVEN LABELL,** an individual, **LARRY KAHN,** an individual, **JOSEPH L. ALLEN,** an individual, **BRUCE N. CROWN,** an individual, **PHIL FERRINI,** an individual, **STUART SCHWARTZ,** an individual, and **UNIVERSAL FINANCIAL HOLDING CORPORATION,** a Florida corporation, | : : : : : : : : : | **NO. 2:04-cv-3641** |
| Defendants. | : : | |

## CONSENT ORDER OF PERMANENT INJUNCTION AND EQUITABLE RELIEF AGAINST DEFENDANTS WORLDWIDE COMMODITY CORPORATION, SOUTH COAST COMMODITIES INC., STEVEN LABELL, LARRY KAHN, JOSEPH L. ALLEN, PHIL FERRINI AND STUART SCHWARTZ

### I.    INTRODUCTION

On August 2, 2004, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed its complaint in the above-captioned action against Worldwide Commodity Corporation ("Worldwide"), Steven Labell ("Labell"), Larry Kahn ("Kahn"), Joseph L. Allen ("Allen"), and Phil Ferrini ("Ferrini")[1] seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2002), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.*

---

[1] The Commission's Complaint also brought claims against Bruce N. Crown and Universal Financial Holding Corporation.

(2004). The Court entered an Order of Preliminary Injunction against Worldwide, Labell, Allen, and Ferrini on September 15, 2004. Subsequently, on October 28, 2005, Plaintiff filed an amended complaint adding South Coast Commodities Inc. ("South Coast") and Stuart Schwartz ("Schwartz") as Defendants.

## II.    CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint in this action without a trial on the merits or further judicial proceedings, Worldwide, South Coast, Labell, Kahn, Allen, Ferrini, and Schwartz (collectively, "Defendants"):

1.    Consent to entry of this Consent Order of Permanent Injunction and Equitable Relief Against Defendants ("Consent Order");

2.    Affirm that Defendants have agreed to this Consent Order voluntarily, and that no threat, or promise other than as specifically contained herein, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.    Acknowledge service of the summons and complaint;

4.    Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5.    Admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

6.    Waive:

a.    all claims which they may possess under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (2000) and 28 U.S.C. § 2412 (2000), relating to, or arising from, this

action and any right under EAJA to seek costs, fees and other expenses relating to, or arising from, this action;

        b.     any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

        c.     all rights of appeal from this Consent Order;

    7.    Consent to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this case, even if Defendants now or in the future reside outside the jurisdiction;

    8.    Agree that neither Defendants nor their agents, employees or representatives acting under their control shall take any action or make any public statement denying, directly or indirectly, any allegations in the Complaint, Amended Complaint or findings in this Consent Order, or creating or tending to create the impression that the Complaint, Amended Complaint and this Consent Order are without factual basis; provided, however, that nothing in this provision shall affect Defendants: i) testimonial obligations, or ii) right to take legal positions in other proceedings to which the Commission is not a party. Defendants will undertake all steps necessary to assure that their agents, employees and representatives understand and comply with this agreement;

    9.    In consenting to the entry of this Consent Order, Defendants neither admit nor deny the allegations of the Complaint, Amended Complaint or the Findings of Fact and Conclusions of Law contained in this Consent Order, except as to jurisdiction and venue, which they admit. With respect to any bankruptcy proceeding relating to any Defendant, or any proceeding to enforce this Order, Defendants agree that the allegations of the Complaint,

Amended Complaint and all of the Findings of Fact and Conclusions of Law as contained in Part III of this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof. Furthermore, each Defendant agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by Part VI of this Order, of any bankruptcy proceeding filed by, on behalf of, or against him or it. No provision of this order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against Defendants or any other person in any other proceeding; and

10.    Each Defendant agrees to cooperate with the Commission staff in the continuing litigation of this matter against any Defendant not a party to this Consent Order. As part of such cooperation, each Defendant agrees, subject to all applicable privileges, to comply fully, promptly and truthfully to any inquiries or requests for information or testimony, including but not limited to, testifying completely and truthfully at any trial or hearing in this action, producing written statements or trial declarations to the Commission related to any trial of the subject matter of this proceeding.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of Findings of Fact, Conclusions of Law, and a permanent injunction and ancillary relief pursuant to § 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

**Findings of Fact:**

11.    This Court has subject matter jurisdiction over this action and the allegations in the Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

12.     This Court has personal jurisdiction over Defendants pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

13.     Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, because Defendants transacted business in the Eastern District of Pennsylvania.

14.     The Commission and Defendants have agreed that this Court shall retain jurisdiction over each Defendant for the purpose of enforcing the terms of this Consent Order.

15.     The **Commodity Futures Trading Commission** is an independent federal agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq*., and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*.

16.     Defendant **Worldwide Commodity Corporation** is a Florida corporation with its principal place of business at 700 N. Hiatus Road #203, Pembroke Pines, Florida, 33026. Worldwide has been registered with the Commission as a guaranteed Introducing Broker ("IB") of Universal Financial Holding Corporation ("UFHC"), a registered futures commission merchant ("FCM"), since at least November 1, 2000. Worldwide first registered with the Commission on December 3, 1998. Its primary business was to solicit customers to purchase options on futures contracts ("options") through UFHC. Worldwide employed registered associated persons ("APs") to conduct its business.

17.     Defendant **South Coast Commodities, Inc.** is a Florida corporation with its principal place of business at 700 N. Hiatus Road #203, Pembroke Pines, Florida, 33026. South Coast has been registered with the Commission as an IB since at least January 31, 2005. South Coast is a successor corporation to Worldwide. On January 31, 2005, Worldwide transferred 100% of its stock, and their brokers and customer accounts were transferred to South Coast for no consideration. No significant changes in company structure, leadership, compensation or

5

business operations occurred in the transformation of Worldwide to South Coast. South Coast's primary business was to solicit customers to purchase commodity options. As a successor corporation to Worldwide, South Coast is liable for the fraudulent acts, misrepresentations, and omissions of Worldwide's APs, which occurred within the scope of their employment with Worldwide.

18.     Defendant **Steve Labell**, resides in Plantation, Florida. He has been registered with the Commission as an AP and has been listed as a principal of Worldwide since November 20, 1998. He is Worldwide's President and Director, owns fifty percent of Worldwide, and has supervisory duties and authority over the day to day operations of Worldwide's business. He is also a fifty percent owner of South Coast, is listed as a firm principal and has supervisory duties and authority over the day to day operations of South Coast's business. Labell maintained an office at Worldwide and subsequently South Coast. His day to day responsibilities included, but were not limited to: 1) hiring and firing of Worldwide APs; 2) signing employee and management paychecks; 3) signing Worldwide's agreements, including Worldwide's guaranteed introducing broker agreement with UFHC; 4) signing Worldwide's settlement agreements with disgruntled customers; 5) determining disciplinary actions taken with respect to Worldwide APs; and 6) conducting the firm's self-examination audit with the National Futures Association ("NFA").

19.     Defendant **Larry Kahn**, resides in Plantation, Florida. He has been registered with the Commission as an AP and has been listed as a principal of Worldwide since November 20, 1998. He is Worldwide's Vice-President and Director, owns fifty percent of Worldwide, and has supervisory duties and authority over the day to day operations of Worldwide's business. He is also a fifty percent owner of South Coast, is listed as a firm principal and has supervisory

duties and authority over the day to day operations of South Coast's business. Kahn maintained an office at Worldwide and subsequently South Coast. His day to day responsibilities included, but were not limited to: 1) hiring and firing of Worldwide APs; 2) signing employee and management paychecks; 3) signing Worldwide's contractual agreements; 4) signing Worldwide's settlement agreements with disgruntled customers; 5) determining disciplinary actions taken with respect to Worldwide APs; 6) instructing brokers on compliance and sales solicitations at regular morning meetings; and 7) supervising and monitoring AP sales solicitations.

20.     Defendant **Joseph L. Allen**, resides in Plantation, Florida. He was a registered AP of Worldwide from December 2, 2002 until January 20, 2004, and again from March 29, 2004 until January 31, 2005. As of January 31, 2005, he was a registered AP of South Coast. At one time he was listed as a Worldwide principal.

21.     Defendant **Phil Ferrini**, resides in Hollywood, Florida. He was a registered AP of Worldwide off and on since May 3, 1999. At one time he was listed as a Worldwide principal. As of January 31, 2005, he was a registered AP of South Coast.

22.     Defendant **Stuart Schwartz**, resides in Cooper City, Florida. He was a registered AP of Worldwide from October 9, 2000 to February 1, 2005. As of January 31, 2005, he was a registered AP of South Coast.

**Worldwide APs Violated the Act and Regulations**

23.     Since at least January 1, 2003, Worldwide APs solicited members of the general public to open accounts to trade options. To induce customers to trade, Worldwide APs—aided by a sales script—made uniform and consistent misrepresentations regarding the risks and rewards of trading options. In telephone sales calls, Worldwide APs engaged in fraudulent sales

solicitations by knowingly misrepresenting and failing to disclose material facts concerning, among other things: (i) the profit potential of options; (ii) the risk involved in trading options; and (iii) in light of the profit representations made, Worldwide's poor trading record. Worldwide customers relied on these material misrepresentations made by Worldwide APs in making their decisions to purchase options.

### Worldwide APs Misrepresented the Profit Potential of Options

24.     Worldwide APs misrepresented the profit potential of options trading and the likelihood that profit would be achieved. Worldwide APs promised customers that they would make substantial amounts of money in a very short time by trading options. For example, Allen told a customer that he would more than double his money and that Allen has seen $6,000 become $98,000 in just a few hours; Ferrini told a customer he would make $3,500 into $15,000; and Schwartz told multiple customers they could double their money by buying options with Worldwide. Other Worldwide APs told their customers, among other things, that they could double or triple their money, or that the customer could earn an 87 percent return, or that a customer could realistically earn $500,000 on a $42,000 investment.

25.     Worldwide APs misrepresented to their customers that well-known public information would lead to large profits, including information that the commodities markets had already factored into the price of the underlying commodity. For example, Allen told a customer that the war in Iraq would push crude oil prices higher and that buying crude oil options would therefore be profitable. Other Worldwide APs told their customers that the price of the Euro would be affected by the United States' involvement in the war in Iraq and that customers would profit by purchasing Euro options.

26.     Worldwide APs also misrepresented to their customers that a past weather condition would affect the commodities markets such that Worldwide APs could easily exploit that event in a way that would provide a substantial profit.  For example, Worldwide APs, and specifically Allen and Ferrini, told their customers that gasoline consumption increases during the summer travel season and therefore the customer could profit from unleaded fuel options purchased prior to the summer travel season.  Further, Schwartz told a customer that heating oil prices rally in the winter months so the customer could earn 20 to 40 percent profit on heating oil options.

27.     Worldwide APs misrepresented the urgency of the investment opportunity by using high-pressure sales pitches to convince customers to invest immediately so as not to miss a purported opportunity to earn enormous profits.  If the prospective customers hesitated, Worldwide APs increased the urgency by telling customers that they must act immediately in order to maximize profits.  For example, Allen told a customer that if he did not send in his money immediately he would miss out on an once-in-a-lifetime opportunity and Schwartz told a customer that he would earn a large profit in Yen options but only if he purchased the Yen options that day.  Other Worldwide APs told their customers that they could earn a large profit, but only if they bought the commodity options before Memorial Day, which was coming in a few days.

**Worldwide APs Misrepresented the Risk of Trading Options**

28.     Worldwide APs provided misleading advice about the risk involved with trading options.  While claiming that customers would realize a large return, Worldwide APs failed to explain the specific risks of trading options.  In most instances, references to standard risk disclosures required in the industry were effectively nullified by Worldwide APs' repeated

9

misrepresentations of large profit potential. When customers expressed concerns about losing

their money, or their apprehension about making risky investments, they were told that investing

in options on commodities was low-risk, secure and they would make money. For example,

Schwartz told a customer that it was very unlikely he would lose all or part of his money and told

another customer that Euro options were low risk. Other Worldwide APs told their customers

that the investing opportunity was like picking hundred dollar bills off the ground, or that only

those individuals who did not trust Worldwide's trading advice lost money.

**Worldwide APs Failed to Disclose the Firm's Losing Track Record**

29.     Between January 1, 2003 and August 1, 2004, Worldwide had a total of 341

customer accounts. Of those 341 accounts, 98 percent lost money. Collectively, these customer

accounts lost $5,021,892.

30.     Worldwide charged its customers at least $3.5 million in commissions and fees;

which is more than 50 percent of the collective customer losses.

31.     Despite massive customer losses, Worldwide never disclosed to prospective and

current customers, in light of the profit representations they were making, that 98 percent of

Worldwide customers had lost substantially all of their investments with Worldwide. In fact,

Worldwide APs encouraged customers to invest by misrepresenting to the customer that they

were successful traders. For example, Ferrini told a customer that he had many clients making

money; Schwartz told a customer that his clients made large profits – up to a 70% increase in

their money; and Allen told a customer his clients were doing well and it was nearly impossible

to lose money because he managed the account daily. Other Worldwide APs told their

customers that they had numerous customers who earned substantial profits and following their

trading advice was a sure way to make money.

**Sales Script**

32.     Worldwide APs used a sales script to make consistent sales solicitations to their customers.  This script was located on several of the AP's desks from which they conducted their telephone sales calls.

33.     The sales script provided Worldwide APs with specific statements of fraud and misrepresentation to be made to Worldwide's customers.  The sales script contained misrepresentations about high profit potential and limited risk in trading commodity options.  The language in the sales script is consistent with the misrepresentations and the downplaying of investment risk that Worldwide APs orally told their customers.

34.     As a successor corporation of Worldwide, South Coast is liable for the fraudulent acts, misrepresentations, and omissions of Worldwide's AP which occurred within the scope of their employment with Worldwide.

35.     Labell and Kahn directly or indirectly controlled Worldwide's APs, and did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violations alleged as to Worldwide.

**<u>Conclusions of Law</u>:**

36.     From at least January 1, 2003 to January 31, 2005, Worldwide, through its APs, and Allen, Schwartz and Ferrini, in connection with an offer to enter into, the entry into, the confirmation of, the execution of, or the maintenance of commodity options transactions, defrauded, deceived, or attempted to defraud, or deceive, other persons by making false, deceptive, or misleading representations of material facts and by failing to disclose material facts necessary to make other facts disclosed not misleading to customers, all in violation of Section

4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 33.10(a) and (c) of the Regulations, 17 C.F.R. § 33.10(a) and (c).

 37. The fraudulent acts, misrepresentations, and omissions of Worldwide's APs, including Allen, Schwartz and Ferrini, occurred within the scope of their employment with Worldwide. Worldwide is therefore liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

 38. Labell and Kahn are controlling persons of Worldwide and are liable for Worldwide's violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10(a) and (c), 17 C.F.R. § 33.10(a) and (c), pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

 **NOW, THEREFORE,** Plaintiff having demonstrated good cause why equitable remedies, including restitution and trading bans, should be imposed on Defendants as set forth below:

## IV. ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED that:**

 39. Defendants are found to have violated the Act and Regulations and are permanently restrained, enjoined and prohibited from, directly or indirectly, cheating or defrauding or attempting to cheat or defraud other persons and willfully deceiving or attempting to deceive other persons by making false, deceptive or misleading representations of material facts, by failing to disclose material facts, in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of any commodity option transaction in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10(a) and (c), 17 C.F.R. § 33.10(a) and (c) , and specifically from engaging in any commodity sales solicitations to customers that:

  A) misrepresent the profit potential in commodities trading;

B) omit to state that the commodities market already factors into the price of commodities any seasonal trends and other well-known market events;

C) omit material facts necessary to make other facts disclosed not misleading to customers;

D) omit to provide the actual track record of the broker or firm if the potential for profit is discussed; and

E) omit or downplay the risks involved in commodity trading, regardless of whether the customer has signed a standard risk disclosure statement.

40.     Defendants are permanently restrained, enjoined, and prohibited from, directly or indirectly, engaging in any trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29), in any account:

(i)  that is held in any Defendants' name; or

(ii)  in which any Defendant has a direct or indirect financial interest; or

(iii)  that is held in the name of any other person.

41.     Allen, Schwartz, Ferrini, Labell and Kahn are permanently restrained, enjoined, and prohibited from applying for registration or seeking exemption from registration with the Commission in any capacity or engaging in any activity requiring registration or exemption from registration, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), and acting, directly or indirectly, as a principal, officer, director, supervisor, agent or employee of any person registered, required to be registered or exempted from registration, unless such exemption is pursuant to Commission Regulation 4.14(a)(9).  This includes, but is not limited to, soliciting, accepting or receiving any funds, revenue or other property from any person, giving commodity trading advice for compensation or soliciting prospective customers related to the

purchase or sale of any commodity futures, security futures, options, options on futures, or foreign currency futures, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

42.     The injunctive provisions of this Consent Order shall be binding upon Defendants and any person who is acting as officer, agent, employee, servant, or attorney on their behalf, and any person acting in active concert or participation with Defendants who receives actual notice of this Consent Order by personal service or otherwise.

## V.     ORDER FOR RESTITUTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF

**IT IS HEREBY ORDERED that:**

43.     Appointment of Monitor:  The Court appoints Daniel Driscoll of the National Futures Association as Monitor ("Monitor") to effect payment by Defendants and distribution of restitution to Worldwide's customers.  The Monitor shall not be liable for any action or inaction arising from his appointment as Monitor, other than actions involving fraud.

44.     Restitution Payment:  Worldwide, South Coast, Labell and Kahn are hereby jointly and severally liable to pay restitution to Worldwide customers identified in Appendix A to this Consent Order, provided that the joint and several liability of each person or entity is capped at the amount of restitution listed for that person or entity below:

|  | |
|---|---|
| Worldwide | $5,021,892 |
| South Coast | $5,021,892 |
| Steve Labell | $2,500,000 |
| Larry Kahn | $2,500,000 |

Allen, Schwartz and Ferrini are hereby liable to pay restitution to Worldwide customers identified in Appendix A to this Consent Order in the following amounts:

14

| Joseph Allen | $435,000 |
| Stuart Schwartz | $460,000 |
| Phil Ferrini | $320,000 |

All restitution amounts are immediately due and owing upon the entry of this Order.

The amounts above shall each accrue post-judgment interest beginning on the date of entry of this Order and payable at the interest rate set forth in 28 U.S.C. § 1961. All restitution paid shall be made by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission or other "settlement fund" named account to be determined by the Monitor, and sent to Daniel Driscoll, Monitor, National Futures Association, 200 W. Madison St., #1600, Chicago, IL 60606-3447 under a cover letter that identifies the individual Defendant and the name and docket number of the proceedings. Defendants shall simultaneously transmit a copy of the cover letter and the form of payment to Gregory Mocek, or his successor, Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

45.   Distribution of Restitution: The Monitor shall distribute any restitution funds obtained or collected from Defendants on a pro rata basis, or in such other equitable fashion as he may determine to be just and reasonable, to each of the customers identified in Appendix A to this Consent Order. The Monitor may, based upon the amount of funds available, defer distribution until such time as the Monitor deems appropriate. Nothing herein shall be construed in any way to limit or abridge the rights of any Worldwide customer that exist under federal, state, or common law to assert a claim for recovery against Defendants subject to any offset or credit that Defendants may be entitled to claim under the law governing that customer's claim.

Omission of any customer from those identified in Appendix A to this Consent Order shall in no way limit the ability of such customer from seeking recovery from Defendants or any other person or entity in a separate action. All Defendants shall cooperate fully and expeditiously with the Commission and Monitor in the payment and/or distribution of funds under this Consent Order. Subsequent to the entry this Consent Order, each Defendant shall provide the Commission and the Monitor with immediate notice of any filing or compromise and settlement of any private or governmental actions relating to the subject matter of this order in the manner required by Part VI of this Consent Order.

46. <u>Civil Monetary Penalties</u>: The following Civil Monetary Penalties ("CMP") are assessed by the Court:

      a.      Worldwide is ordered to pay a $3,500,000 CMP;

      b.      South Coast is ordered to pay a $3,500,000 CMP;

      c.      Labell is ordered to pay a $525,000 CMP;

      d.      Kahn is ordered to pay a $525,000 CMP;

      e.      Allen is ordered to pay a $159,042 CMP;

      f.      Schwartz ordered to pay a $176,138 CMP;

      g.      Ferrini is ordered to pay a $152,178 CMP;

The CMPs are immediately due and owing upon the entry of this Order, provided that all payments made by Defendants pursuant to this Consent Order shall be applied first to satisfy Defendants' restitution payment under this Consent Order and, upon satisfaction of such obligations, shall thereafter be applied to satisfy Defendants' CMP obligations under this Consent Order. The amounts above shall each accrue post-judgment interest beginning on the date of entry of this Order and payable at the interest rate set forth in 28 U.S.C. § 1961. All

Defendants above shall make their CMP payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, under a cover letter that identifies the individual Defendant making the payment and the name and docket number of the proceedings. Each Defendant shall simultaneously transmit a copy of the cover letter and the form of payment to the Monitor and to Gregory Mocek, or his successor, Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

47.     The equitable relief provisions of this Consent Order shall be binding upon Defendants, and any person who is acting in the capacity of officer, agent, employee, servant, or attorney of Defendants, and any person acting in active concert or participation with Defendants, who receives actual notice of this Consent Order by personal service or otherwise.

## VI.     MISCELLANEOUS PROVISIONS

### IT IS HEREBY ORDERED that:

48.     Upon execution of this Consent Order, the Preliminary Injunction shall dissolve as to each Defendant.

49.     <u>Notices</u>:   All notices required to be given by any provision in this Consent Order to the Commission shall be sent certified mail, return receipt requested, as follows:
Notice to Commission: Attention - Director of Enforcement, Commodity Futures Trading Commission, Division of Enforcement, 1155 21st Street N.W., Washington, DC 20581; Notice to

NFA: Attention - Daniel Driscoll, National Futures Association, 200 W. Madison St., #1600, Chicago, IL 60606-3447.

50.    <u>Entire Agreement and Amendments</u>:   This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto.   Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

51.    <u>Invalidation</u>:   If any provision of this Consent Order, or if the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provisions to any other person or circumstance shall not be affected by the holding.

52.    <u>Waiver</u>:   The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order.   No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

53.    <u>Acknowledgements</u>:   Upon being served with copies of this Consent Order after entry by the Court, Defendants shall sign acknowledgments of such service and serve such acknowledgments on the Court and the Commission within seven (7) calendar days.

54.    <u>Continuing Jurisdiction of this Court</u>:   This Court shall retain jurisdiction of this cause to assure compliance with this Consent Order and for all other purposes related to this action.

55.   <u>Authority</u>:   Labell hereby warrants that he is the President of Worldwide and South Coast and Kahn hereby warrants that he is the Vice-President of Worldwide and South Coast, and that this Consent Order has been duly authorized by Worldwide and South Coast and that Labell and Kahn each has been duly empowered to sign and submit it on behalf of Worldwide and South Coast, respectively.

56.   <u>Counterparts and Facsimile Execution</u>.  This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Agreement that is delivered by facsimile shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Agreement.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order.

**SO ORDERED**, at Philadelphia, Pennsylvania on this _____ day of _____ 2006.

_____
**HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE**

Kenneth W. McCracken, Esq.                     Date: 9/13/06
Jeff LeRiche, Esq.
Jo Mettenburg, Esq.
Two Emanuel Cleaver II Blvd., Suite 300
Kansas City, Missouri 64112
816-960-7742 (McCracken)
816-960-7750 (fax)
Attorneys for Plaintiff
U.S. Commodity Futures Trading Commission

*CONSENTED TO AND APPROVED BY:*

_____        Date: 7-7-06
Steve Labell, Individually and on
behalf of Worldwide Commodity Corp. and South Coast Commodities, Inc.


_____        Date: 7-7-06
Larry Kahn, Individually and on
behalf of Worldwide Commodity Corp. and South Coast Commodities, Inc.


_____        Date:_____
Joseph Allen, Individually.


_____        Date:_____
Stuart Schwartz, Individually.


_____        Date:_____
Phil Ferrini, Individually.


Approved for Entry:

_____        Date:_____
Vivian R. Drohan, Esq.
John P. Drohan III, Esq.
Drohan & Drohan
150 East 58th Street, 34th Floor
New York, New York 10155-0002
212-644-7444
212-317-2946 (fax)
Counsel for Defendants Worldwide Commodity, South Coast Commodities, Steven Labell, Joseph
Allen, Phil Ferrini, Stuart Schwartz, and Larry Kahn Counsel for
Defendant Universal Financial Holding Corporation

20

*CONSENTED TO AND APPROVED BY:*

_____     Date:_____
Steve Labell, Individually and on
behalf of Worldwide Commodity Corp. and South Coast Commodities, Inc.


_____     Date:_____
Larry Kahn, Individually and on
behalf of Worldwide Commodity Corp. and South Coast Commodities, Inc.


Joseph Allen, Individually.     Date: July 14, 2006


_____     Date:_____
Stuart Schwartz, Individually.


_____     Date:_____
Phil Ferrini, Individually.


Approved for Entry:

_____     Date:_____
Vivian R. Drohan, Esq.
John P. Drohan III, Esq.
Drohan & Drohan
150 East 58th Street, 34th Floor
New York, New York 10155-0002
212-644-7444
212-317-2946 (fax)
Counsel for Defendants Worldwide Commodity, South Coast Commodities, Steven Labell, Joseph
Allen, Phil Ferrini, Stuart Schwartz, and Larry Kahn Counsel for
Defendant Universal Financial Holding Corporation

20

*CONSENTED TO AND APPROVED BY:*

_____   Date:_____
Steve Labell, Individually and on
behalf of Worldwide Commodity Corp. and South Coast Commodities, Inc.


_____   Date:_____
Larry Kahn, Individually and on
behalf of Worldwide Commodity Corp. and South Coast Commodities, Inc.


_____   Date:_____
Joseph Allen, Individually.


_____   Date:___7/5/06_____
Stuart Schwartz, Individually.


_____   Date:_____
Phil Ferrini, Individually.


Approved for Entry:

_____   Date:_____
Vivian R. Drohan, Esq.
John P. Drohan III, Esq.
Drohan & Drohan
150 East 58th Street, 34th Floor
New York, New York 10155-0002
212-644-7444
212-317-2946 (fax)
Counsel for Defendants Worldwide Commodity, South Coast Commodities, Steven Labell, Joseph
Allen, Phil Ferrini, Stuart Schwartz, and Larry Kahn Counsel for
Defendant Universal Financial Holding Corporation

20

*CONSENTED TO AND APPROVED BY:*

_____     Date:_____
Steve Labell, Individually and on
behalf of Worldwide Commodity Corp. and South Coast Commodities, Inc.


_____     Date:_____
Larry Kahn, Individually and on
behalf of Worldwide Commodity Corp. and South Coast Commodities, Inc.


_____     Date:_____
Joseph Allen, Individually.


_____     Date:_____
Stuart Schwartz, Individually.


_____     Date: 2/8/06
Phil Ferrini, Individually.


Approved for Entry:

_____     Date:_____
Vivian R. Drohan, Esq.
John P. Drohan III, Esq.
Drohan & Drohan
150 East 58th Street, 34th Floor
New York, New York 10155-0002
212-644-7444
212-317-2946 (fax)
Counsel for Defendants Worldwide Commodity, South Coast Commodities, Steven Labell, Joseph
Allen, Phil Ferrini, Stuart Schwartz, and Larry Kahn Counsel for
Defendant Universal Financial Holding Corporation