UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br>　　　　Plaintiff,<br><br>v.<br><br>WORLDWIDE COMMODITY CORPORATION, a Florida corporation, SOUTH COAST COMMODITIES, INC., a Florida corporation, STEVEN LABELL, an individual, LARRY KAHN, an individual, JOSEPH L. ALLEN, an individual, BRUCE N. CROWN, an individual, PHIL FERRINI, an individual, STUART SCHWARTZ, an individual, and UNIVERSAL FINANCIAL HOLDING CORPORATION, a Florida corporation,<br>　　　　Defendants. | CIVIL ACTION<br><br>NO. 2:04-cv-3641 |

CONSENT ORDER OF PERMANENT INJUNCTION
AND EQUITABLE RELIEF AGAINST DEFENDANT
BRUCE N. CROWN

## I.　INTRODUCTION

On August 2, 2004, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed its complaint in the above-captioned action against Bruce N. Crown ("Crown" or "Defendant" )[1] seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 et seq. (2002), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2004). The Court entered an Order of Preliminary Injunction against Crown on September 10, 2004. Subsequently, on March 28, 2006, the Court entered an Order of Partial Summary Judgment against Crown finding that he violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation

---

[1] The Commission's Complaint also brought claims against Worldwide Commodity Corporation, Steven Labell, Larry Kahn, Joseph L. Allen, Phil Ferrini and Universal Financial Holding Corporation. The Commission amended the complaint on October 28, 2005, to add Stuart Schwartz and South Coast Commodities Inc. as Defendants.

1

33.10, 17 C.F.R. § 33.10 by making material misrepresentations and omissions of fact while employed as an associated person ("AP") of Worldwide Commodity Corporation ("Worldwide").

## II.   CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint and Amended Complaint in this action without a trial on the merits or further judicial proceedings, Crown:

1.   Consents to entry of this Consent Order of Permanent Injunction and Equitable Relief Against Defendant Bruce Crown ("Consent Order");

2.   Affirms that Defendant has agreed to this Consent Order voluntarily, and that no threat, or promise other than as specifically contained herein, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.   Acknowledges service of the summons and complaint;

4.   Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5.   Admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

6.   Waives:

    a.   all claims which he may possess under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (2000) and 28 U.S.C. § 2412 (2000), relating to, or arising from, this action and any right under EAJA to seek costs, fees and other expenses relating to, or arising from, this action;

   b. any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

   c. all rights of appeal from this Consent Order;

  7. Consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this case, even if Defendant now or in the future resides outside the jurisdiction;

  8. Agrees that neither Defendant nor his agents, employees or representatives acting under his control shall take any action or make any public statement denying, directly or indirectly, any allegations in the Complaint, Amended Complaint or findings in this Consent Order, or creating or tending to create the impression that the Complaint, Amended Complaint and this Consent Order are without factual basis; provided, however, that nothing in this provision shall affect Defendant's: i) testimonial obligations, or ii) right to take legal positions in other proceedings to which the Commission is not a party. Defendant will undertake all steps necessary to assure that his agents, employees and representatives understand and comply with this agreement;

  9. In consenting to the entry of this Consent Order, Defendant neither admits nor denies the allegations of the Complaint, Amended Complaint and the Findings of Fact and Conclusions of Law contained in this Consent Order, except as to jurisdiction and venue, which Defendant admits. With respect to any bankruptcy proceeding relating to Defendant, or any proceeding to enforce this Order, Defendant agrees that the allegations of the Complaint, Amended Complaint and all of the Findings of Fact and Conclusions of Law as contained in Part III of this Consent Order shall be taken as true and correct and be given preclusive effect,

3

without further proof. Furthermore, Defendant agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by Part VI of this Order, of any bankruptcy proceeding filed by, on behalf of, or against him. No provision of this order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against Defendant or any other person in any other proceeding; and

10. Defendant agrees to cooperate with the Commission staff in the continuing litigation of this matter against any other Defendant not a party to this Consent Order. As part of such cooperation, Defendant agrees, subject to all applicable privileges, to comply fully, promptly and truthfully to any inquiries or requests for information or testimony, including but not limited to, testifying completely and truthfully at any trial or hearing in this action, producing written statements or trial declarations to the Commission related to any trial of the subject matter of this proceeding.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of Findings of Fact, Conclusions of Law, and a permanent injunction and ancillary relief pursuant to § 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

### Findings of Fact:

11. This Court has subject matter jurisdiction over this action and the allegations in the Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

12. This Court has personal jurisdiction over Defendant pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

13.     Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, because Defendant transacted business in the Eastern District of Pennsylvania.

14.     The Commission and Defendant have agreed that this Court shall retain jurisdiction over Defendant for the purpose of enforcing the terms of this Consent Order.

15.     The **Commodity Futures Trading Commission** is an independent federal agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.*

16.     Defendant **Bruce N. Crown** during the time period alleged in the Amended Complaint resided in Miami, Florida. He was registered as an AP of Worldwide from December 2, 2002 until August 6, 2005. Crown was listed as a principal of Worldwide from January 30, 2003, until August 6, 2005, during which time he also served as Worldwide's manager.

**Crown Violated the Act and Regulations as a Worldwide AP**

17.     From at least January 1, 2003 through August 6, 2005, Crown, as a Worldwide AP, solicited members of the general public to open accounts to trade options on futures contracts ("options"). To induce customers to trade, Crown made uniform and consistent misrepresentations regarding the risks and rewards of trading options. In telephone sales calls, Crown engaged in fraudulent sales solicitations by knowingly misrepresenting and failing to disclose material facts concerning, among other things: (i) the profit potential of options; (ii) the risk involved in trading options; and (iii) in light of the profit representations made, Worldwide's poor trading record. Worldwide customers that were solicited by Crown relied on his material misrepresentations in making their decisions to purchase options. In fact, Crown admitted that he believed it was impossible to sell an option without committing fraud or making misrepresentations.

### Crown Misrepresented the Profit Potential of Options

18.     Crown misrepresented the profit potential of options trading and the likelihood that profit would be achieved. Crown promised customers that they would make substantial amounts of money in a very short time by trading options. For example, Crown told a customer that he would realistically earn $500,000 on a $42,000 outlay; Crown told a customer he would make $30,000 within a few weeks on a $10,000 investment; and Crown told a customer that he could expect to earn $200,000 within two months on a $50,000 purchase of options.

19.     Crown misrepresented to Worldwide customers that well-known public information or seasonal trends such as a past weather conditions would lead to large profits, including information that the commodities markets had already factored into the price of the underlying commodity. For example, Crown told a customer that the price of unleaded fuel always goes up during the summer, that the travel season was about to begin, that travel is always high during Memorial Day weekend, and that buying unleaded fuel options would therefore be profitable. Crown also told customers that a recent announcement by then Federal Reserve Chairman Alan Greenspan that there was a shortage of natural gas or that the United States was due for a cold winter would make the price of natural gas rise soon, therefore it was a good time to buy natural gas options.

20.     Crown misrepresented the urgency of the investment opportunity by using high-pressure sales pitches to convince customers to invest immediately so as not to miss a purported opportunity to earn enormous profits. For example, Crown told a customer that she could earn a large profit, but only if she bought the options immediately.

**Crown Misrepresented the Risk of Trading Options**

21. Crown provided misleading advice about the risk involved with trading options. While claiming that customers would realize a large return, Crown failed to explain the specific risks of trading options. In most instances, references to standard risk disclosures required in the industry were effectively nullified by Crown's repeated misrepresentations of large profit potential. For example, Crown told a customer that buying options on the Japanese Yen was a once in a lifetime opportunity. Crown also told customers that the investing opportunity was like picking hundred dollar bills off the ground.

**Crown Failed to Disclose the Firm's Losing Track Record**

22. Between January 1, 2003 and August 1, 2004, Worldwide had a total of 341 customer accounts. Of those 341 accounts, 98 percent lost money. Collectively, these customer accounts lost $5,021,892. Crown personally handled 228 of these accounts after joining the firm on December 2, 2002.

23. Despite these massive customer losses, Crown never disclosed to prospective and current customers, in light of the profit representations he was making, that 98 percent of Worldwide customers had lost substantially all of their investments with Worldwide. Crown has admitted that he would regularly distort his own trading record to customers by speaking about the success of a single trade made by another customer, however this single trade did not accurately represent Crown's overall trading record (i.e., "cherry picking" trades), thereby distorting his own trading record to appear successful. For example, Crown encouraged customers to invest by misrepresenting to them that he was a very successful trader at the firm and recounted in great detail the numerous clients for whom he made substantial profits.

7

Further, Crown told customers that he really liked helping people, so he continued to trade for customers and make large profits for them.

### Crown "loaded" accounts at Worldwide

24. Crown stated that his primary responsibility at Worldwide was acting as Worldwide's "loader" on sales calls. "Loading" refers to the policy or practice of a broker attempting to sell additional options to a customer after the customer had made an initial purchase of options, without respect to the customer's realistic ability to afford further investment and without regard to the soundness of the investments themselves at the time of the loading.

25. As a loader, Crown would induce Worldwide's customers to place additional trades immediately after they had placed their first trades with Worldwide APs, but before the customer had realized the amount of losses they had sustained in their first trades.

26. Crown admitted that in this practice of loading accounts it was important to get to the customer within the first few days of opening their accounts while they were still "under the ether" before they had sustained a big trading loss, received their first account statement, or realized how much money they had lost in paying commissions on the trades.

### Conclusions of Law:

27. Pursuant to this Court's March 27, 2006 Order granting partial summary judgment against Crown as to his liability, the Court finds that from at least January 1, 2003 to January 31, 2005, Crown, in connection with an offer to enter into, the entry into, the confirmation of, the execution of, or the maintenance of commodity options transactions, defrauded, deceived, or attempted to defraud, or deceive, other persons by making false, deceptive, or misleading representations of material facts and by failing to disclose material facts

necessary to make other facts disclosed not misleading to customers, all in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 33.10(a) and (c) of the Regulations, 17 C.F.R. § 33.10(a) and (c).

**NOW, THEREFORE,** Plaintiff having demonstrated good cause why equitable remedies, including a permanent injunction, restitution and civil monetary penalties, should be imposed on Defendant as set forth below:

### IV.   ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED that:**

28.   Defendant having been found by this Court to have violated the Act and Regulations is permanently restrained, enjoined and prohibited from, directly or indirectly, cheating or defrauding or attempting to cheat or defraud other persons and willfully deceiving or attempting to deceive other persons by making false, deceptive or misleading representations of material facts, by failing to disclose material facts, in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of any commodity option transaction in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10(a) and (c), 17 C.F.R. § 33.10(a) and (c), and specifically from engaging in any commodity sales solicitations to customers that:

   A) misrepresent the profit potential in commodities trading;

   B) omit to state that the commodities market already factors into the price of commodities any seasonal trends and other well-known market events;

   C) omit material facts necessary to make other facts disclosed not misleading to customers;

D) omit to provide the actual track record of the broker or firm if the potential for profit is discussed; and

E) omit or downplay the risks involved in commodity trading, regardless of whether the customer has signed a standard risk disclosure statement.

29.   Defendant is permanently restrained, enjoined, and prohibited from, engaging in, controlling or directing the trading for any commodity futures, security futures, options on futures, or foreign currency options account, in any markets or on any entity regulated by the Commission for himself or on behalf of any other person or entity, whether by power of attorney or otherwise;

30.   Defendant is permanently restrained, enjoined, and prohibited from applying for registration or seeking exemption from registration with the Commission in any capacity or engaging in any activity requiring registration or exemption from registration, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), and acting, directly or indirectly, as a principal, officer, director, supervisor, agent or employee of any person registered, required to be registered or exempted from registration, unless such exemption is pursuant to Commission Regulation 4.14(a)(9). This includes, but is not limited to, soliciting, accepting or receiving any funds, revenue or other property from any person, giving commodity trading advice for compensation or soliciting prospective customers related to the purchase or sale of any commodity futures, security futures, options, options on futures, or foreign currency futures, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

31.   The injunctive provisions of this Consent Order shall be binding upon Defendant and any person who is acting as officer, agent, employee, servant, or attorney on his behalf, and

any person acting in active concert or participation with Defendant who receives actual notice of this Consent Order by personal service or otherwise.

### V. ORDER FOR RESTITUTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF

**IT IS HEREBY ORDERED that:**

32. <u>Appointment of Monitor</u>: The Court appoints Daniel Driscoll of the National Futures Association as Monitor ("Monitor") to receive and take custody of payment by Defendant and distribution of restitution to Crown's customers. The Monitor shall not be liable for any action or inaction arising from his appointment as Monitor, other than actions involving fraud.

33. <u>Restitution Payment</u>: Defendant is hereby liable to pay restitution to his customers identified in Appendix A to this Consent Order, in the amount of $645,000. This restitution amount is immediately due and owing upon the entry of this Order.

The amount above shall accrue post-judgment interest beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of this Order pursuant to 28 U.S.C. § 1961. All restitution paid shall be made by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Worldwide Settlement Account, and sent to Daniel Driscoll, Monitor, National Futures Association, 200 W. Madison St., #1600, Chicago, IL 60606-3447 under a cover letter that identifies the Defendant and the name and docket number of the proceedings. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to both the Director and the Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission, at the following address: Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

34. <u>Distribution of Restitution</u>: The Monitor shall distribute any restitution funds obtained or collected from Defendant on a pro rata basis, or in such other equitable fashion as he may determine to be just and reasonable, to each of the customers identified in Appendix A to this Consent Order. The Monitor may, based upon the amount of funds available, defer distribution until such time as the Monitor deems appropriate. Nothing herein shall be construed in any way to limit or abridge the rights of any Worldwide customer that exist under federal, state, or common law to assert a claim for recovery against Defendant subject to any offset or credit that Defendant may be entitled to claim under the law governing that customer's claim. Omission of any customer from those identified in Appendix A to this Consent Order shall in no way limit the ability of such customer from seeking recovery from Defendant or any other person or entity in a separate action. Defendant shall cooperate fully and expeditiously with the Commission and Monitor in the payment and/or distribution of funds under this Consent Order. Subsequent to the entry this Consent Order, Defendant shall provide the Commission and the Monitor with immediate notice of any filing or compromise and settlement of any private or governmental actions relating to the subject matter of this order in the manner required by Part VI of this Consent Order.

35. <u>Civil Monetary Penalties</u>: Crown is ordered to pay a Civil Monetary Penalty ("CMP") in the amount of $705,000.

The CMP is immediately due and owing upon the entry of this Order, provided that all payments made by Defendant pursuant to this Consent Order shall be applied first to satisfy Defendant's restitution payment under this Consent Order and, upon satisfaction of such obligations, shall thereafter be applied to satisfy Defendant's CMP obligations under this Consent Order. Post-judgment interest shall accrue on the CMP, beginning on the date of entry

of this Order, pursuant to 28 U.S.C. § 1961. Defendant shall make his CMP payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to the attention of the Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, under a cover letter that identifies the Defendant making the payment and the name and docket number of the proceedings. Defendant shall simultaneously transmit a copy of the cover letter and the form of payment to the Monitor and to the Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

36. The equitable relief provisions of this Consent Order shall be binding upon Defendant, and any person who is acting in the capacity of officer, agent, employee, servant, or attorney of Defendant, and any person acting in active concert or participation with Defendant, who receives actual notice of this Consent Order by personal service or otherwise.

## VI. MISCELLANEOUS PROVISIONS

**IT IS HEREBY ORDERED that:**

37. Upon execution of this Consent Order, the Preliminary Injunction shall dissolve as to the Defendant.

38. <u>Notices</u>: All notices required to be given by any provision in this Consent Order to the Commission shall be sent certified mail, return receipt requested, as follows:
Notice to Commission: Attention - Director of Enforcement, Commodity Futures Trading Commission, Division of Enforcement, 1155 21st Street N.W., Washington, DC 20581; Notice to

NFA: Attention - Daniel Driscoll, National Futures Association, 200 W. Madison St., #1600, Chicago, IL 60606-3447.

39. <u>Entire Agreement and Amendments</u>: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

40. <u>Invalidation</u>: If any provision of this Consent Order, or if the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provisions to any other person or circumstance shall not be affected by the holding.

41. <u>Waiver</u>: The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

42. <u>Acknowledgements</u>: Upon being served with copies of this Consent Order after entry by the Court, Defendant shall sign acknowledgment of such service and serve such acknowledgment on the Court and the Commission within seven (7) calendar days.

43. <u>Continuing Jurisdiction of this Court</u>: This Court shall retain jurisdiction of this cause to assure compliance with this Consent Order and for all other purposes related to this action.

44.   <u>Counterparts and Facsimile Execution</u>.  This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Agreement that is delivered by facsimile shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Agreement.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order.

**SO ORDERED**, at Philadelphia, Pennsylvania on this 30th day of January 2006.

_____
HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE

15

CONSENTED TO AND APPROVED BY:

_____   Date: 11/08/06
Bruce N. Crown, Individually and Pro Se.



_____   Date: 1/30/07
Kenneth W. McCracken, Esq.
Jeff LeRiche, Esq.
Jo Mettenburg, Esq.
Two Emanuel Cleaver II Blvd., Suite 300
Kansas City, Missouri 64112
816-960-7742 (McCracken)
816-960-7750 (fax).
Attorneys for Plaintiff
U.S. Commodity Futures Trading Commission